# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2427

_____

Tina Grant, Administrator of the Estate of Johnny Lee Grant

*Plaintiff - Appellant*

v.

City of Blytheville, Arkansas

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: June 15, 2016
Filed: November 14, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Johnny Lee Grant, a black male, was fifty-nine years old and had been an at-will employee of the City of Blytheville, Arkansas, (the City), for twenty-seven years when he was fired on September 26, 2012, by Public Works Director Marvin Crawford. Grant filed this action against the City, alleging that he was fired on account of his race and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967

(ADEA), 29 U.S.C. §§ 621-634, and 42 U.S.C. § 1983. The district court[1] granted the City's motion for summary judgment, concluding that Grant had established a *prima facie* case of race and age discrimination but that he had not shown that the City's legitimate, nondiscriminatory reason for firing him—insubordination—was pretextual. Grant[2] appeals. We affirm, although on the ground that Grant failed to establish a *prima facie* case of race or age discrimination.

We review a grant of summary judgment *de novo* and will affirm when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Id. But the nonmoving party "may not rely on allegations or denials." Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007). Instead, he must substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Id. (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042. We may affirm a grant of summary judgment on any basis supported by the record. Noreen v. PharMerica Corp., 833 F.3d 988, 992 (8th Cir. 2016). We relate the facts in light of these standards.

Johnny Lee Grant was employed by the Street Department, one of several departments that fell under the purview of the City's Public Works Division. Before

---

[1]The Honorable D.P. Marshall, Jr., United States District Court for the Eastern District of Arkansas.

[2]Johnny Lee Grant died while this appeal was pending. Tina Grant, as the administrator of Grant's estate, was substituted as a party pursuant to Federal Rule of Appellate Procedure 43(a)(1).

he was fired, Grant had been driving a Street Department truck that normally transported a three-person work crew along a route through the City to cut weeds and pick up trash. But one member of the crew had recently died and the other had retired, leaving Grant the sole remaining member of the crew assigned to the truck. On the morning of September 26, 2012, Grant's immediate supervisor in the Street Department, Roy Simmons, went to the garage where crews were preparing their trucks for the day. Simmons informed Grant that Steven Walker, a forty-five-year-old black male who had recently transferred from another department, would be driving the truck from that point forward and that Grant would continue working on a crew but not as a driver. It is undisputed that the reassignment had no effect on Grant's title, work hours, or pay, although Grant asserted that the reassignment deprived him of some level of the prestige in the Street Department that he previously held as a driver. After hearing of the reassignment Grant and Simmons then left the garage and went to Crawford's office, where, according to Grant:

> [Crawford] told me that I wouldn't be driving the truck no more. I said, "Well, that ain't no problem. I mean, you're the boss, that ain't no problem." And he said, "Well, what you gonna do?" And he said, "What you gonna do, quit?" I told him, "No, no, I'm not gonna quit." And he said, "You ain't gonna quit? Well, you're fired, then." And I said, "Well, okay."

Crawford stated in his deposition, however, that after Simmons told Grant that Walker would be driving the truck, Simmons and Grant arrived at Crawford's office and Simmons told Crawford that Grant "wasn't going to . . . [l]et the new man drive the vehicle." After that, according to Crawford:

> I asked Johnny, I said, "Johnny," I said, "what do you mean, you're not going to do it?" He says, "I ain't gonna do it." I said, "Well, Johnny," I said, "what do you want to do? Are you gonna retire?" He said, "Nope, not going to retire." I said, "Well, Johnny," I said, "if you don't

do what I ask, then I've got no use for you."  He said, "Well."  I said, "The only thing I know to do is just go up and see Ms. Andrews."

Crawford testified that he believed Grant was refusing to work in any capacity if he was not permitted to drive the truck and that Grant was fired for this insubordination. Simmons, Walker, and Sylvia Campbell (Crawford's secretary) were also present for some part of these events.  Each of them was deposed, and their testimony corresponded in all relevant respects to Crawford's version of events, *i.e.*, that Grant refused to work at all unless he was assigned to drive the truck.  Grant, however, flatly denied that he had refused to work.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), Grant filed his complaint against the City in October 2013, asserting claims of age and race discrimination.  Grant sent a copy of his complaint by certified mail to the Mayor of Blytheville, and a receptionist signed for the package on December 16.  The Mayor briefly reviewed the complaint that day and, believing that it involved a personnel matter, delivered the complaint to the Human Resources (HR) director.  The HR director reviewed the complaint, informed the Mayor that it was related to Grant's EEOC charge, obtained the Mayor's signature on the acknowledgment of service, and returned the acknowledgment on December 17. Neither the Mayor nor the HR director realized that the complaint was separate from Grant's EEOC charge and that the City was required to take action by filing an answer in the district court.

Because the City had not filed an answer to his complaint, Grant eventually filed a motion for entry of default with the Clerk of Court for the Eastern District of Arkansas on April 17, 2014.  The Clerk made an entry of default against the City the next day under Rule 55(a), and Grant's counsel sent a copy of the Clerk's Default to the Mayor on April 22.  See Fed. R. Civ. P. 55(a) (permitting the clerk to enter default when a defendant "has failed to plead or otherwise defend").  When the Mayor received a copy of the Default, he realized that Grant had filed a separate lawsuit in

-4-

federal court. The Mayor delivered the documents to the City Attorney, who promptly filed a response to set aside the entry of default and an answer to the complaint on behalf of the City.

The district court entered an order setting aside the Clerk's entry of default after concluding that the misunderstanding about the nature of Grant's complaint was good cause for the City's failure to file a timely answer. The court found that the City's delay was excusable, that there was no indication of intentional delay or bad faith by the City, that the City acted promptly to file its answer once it became aware of Grant's lawsuit, and that there was "no real prejudice to Grant by allowing the case to proceed on its normal course."

The district court later granted the City's motion for summary judgment, concluding that Grant had established a *prima facie* case of age and race discrimination by "provid[ing] some facts that raise an inference of [such] discrimination," but that he had failed to present sufficient evidence to establish that the City's reason for firing him—insubordination—was a pretext for discrimination.

Grant's brief argues that the district court erred in setting aside the entry of default against the City, in granting the City's motion for summary judgment, and in denying Grant's motion to reconsider.[3]

---

[3]The brief also argues that the district court erred in denying Grant's motion to amend his complaint to add a due-process claim that the Arkansas Department of Workforces (ADWS) improperly withheld unemployment benefits and that Grant should be awarded those benefits. The district court did not err in denying as futile the motion to amend, because ADWS, as an agency of the State of Arkansas, is entitled to sovereign immunity from Grant's claim. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984) (noting that state sovereign immunity extends to state agencies); Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 446 (8th Cir. 1995) ("Suits in federal court against state agencies are . . . barred by the Eleventh Amendment when the suit is in reality a suit against the state" and when

We consider first the argument that the City's untimely filed answer entitled Grant to default judgment on the merits of his discrimination claims and that the district court erred by setting aside the entry of default. Although Rule 55(a) permits the entry of default against a party that fails to "plead or defend," a district court may set aside an entry of default under Rule 55(c) "[f]or good cause shown," and may set aside a default judgment "in accordance with Rule 60(b)." Although the same factors are typically relevant in determining whether to set aside entries of default and default judgments, "[m]ost decisions . . . hold that relief from a default judgment requires a stronger showing of excuse than relief from a mere default order." Johnson v. Daytona Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). This is because "it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." Id. at 784. We generally consider "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." Id.

The City promptly challenged the entry of default, and the district court properly weighed the appropriate facts before concluding that the entry of default should be set aside. The City's delay in filing its answer was excusable. Neither the Mayor nor the HR director realized that Grant's complaint related to a recently filed federal lawsuit that was distinct from the recently concluded EEOC proceedings. Once the Mayor received a copy of the Clerk's Default, the Mayor and the City Attorney acted promptly to file the City's response and its answer to Grant's

"any judgment rendered against the [agency] would ultimately come out of state funds." (internal citations and quotations omitted)). Grant has not argued that the State of Arkansas has waived its immunity in these circumstances. See, e.g., McCoy v. Carter-Jones Timber Co., 352 F. App'x 119, 121 (8th Cir. 2009) (noting that the "State of Arkansas did not waive its immunity, nor did Congress abrogate that immunity when it enacted § 1983").

-6-

complaint. Like the district court, we perceive no bad faith or intentional effort to delay on the City's part. Although the City's delay was substantial—its answer was filed roughly three months late—it was not culpable or blameworthy, especially considering that Grant's delay in seeking an entry of default was equally substantial. Moreover, because the City's answer set forth a meritorious defense to Grant's claims, allowing the case to proceed on its normal course did not prejudice Grant. The district court thus did not err in setting aside the entry of default.

We turn next to the argument that the district court erred in granting summary judgment to the City on Grant's discrimination claims. Under Title VII, the ADEA, and § 1983, an employer may not discriminate against an employee with respect to his compensation, or the terms, conditions, or privileges of his employment because of the employee's race or age. See 42 U.S.C. § 2000e-2; 29 U.S.C. § 623; 42 U.S.C. § 1983; see also Richmond v. Bd. of Regents of the Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (noting that the burden of showing a *prima facie* case of discrimination is the same under Title VII, § 1983, and the ADEA).

In the absence of direct evidence, we analyze employment-discrimination claims under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under this framework, if an employee carries his burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. See id. If the employer meets this burden of production, the employee must then "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "We must affirm the grant of summary judgment on a [discrimination] claim if any essential element of [Grant's] prima facie case is not supported by specific facts

sufficient to raise a genuine issue for trial." Riser v. Target Corp., 458 F.3d 817, 819 (8th Cir. 2006) (quoting Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005)).

The district court properly analyzed Grant's discrimination claims under the McDonnell Douglas burden-shifting framework.[4] Thus, Grant had the initial burden of establishing a *prima facie* case of race and age discrimination, which required him to show that he was a member of a protected class, that he met the City's legitimate employment expectations, that he suffered an adverse employment action, and that the circumstances give rise to an inference of discrimination based on race or age. See Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) (race); Rahlf v. Mo-Tech Corp., 642 F.3d 633, 637 (8th Cir. 2011) (age); see also Young v. Builders Steel Co., 754 F.3d 573, 577 (8th Cir. 2014). Although the "burden of establishing a prima facie case . . . is not onerous," the plaintiff must satisfy every element of his *prima facie* case, carrying at all times the "ultimate burden of proof and persuasion" to establish that the employer discriminated against him on an impermissible basis. Torgerson, 643 F.3d at 1046-47; see Gibson v. Geithner, 776 F.3d 536, 540 (8th Cir. 2015) (noting that "the threshold of proof necessary to establish a *prima facie* case is minimal"). The City concedes that Grant met the first three elements of his *prima facie* case of discrimination based on age and race: he was a member of both protected classes—he was a black male over the age of forty, he met the City's legitimate employment expectations, and he suffered an adverse employment action. The City argues, however, that Grant did not come forward with sufficient evidence to establish the fourth element of his *prima facie* case, *i.e.*, that the circumstances surrounding his discharge gave rise to an inference of discrimination based on age or race.

---

[4]Because Grant did not come forward with evidence that "clearly points to the presence of an illegal motive," he could avoid summary judgment only by creating the requisite inference of unlawful discrimination under the McDonnell Douglas burden-shifting analysis. Torgerson v. City of Rochester, 643 F.3d 1031, 1044 (8th Cir. 2011).

Because the required showing for a *prima facie* case is a "flexible evidentiary standard," a plaintiff can establish an inference of discrimination to satisfy the fourth element "in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, [by showing] biased comments by a decisionmaker," Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011), or by showing pretext with evidence that an employer "failed to follow its own policies" or "shifted its explanation of the employment decision," Young, 754 F.3d at 578 (noting that "pretext can also satisfy the inference-of-discrimination element" of a *prima facie* case). The district court concluded that Grant had established a *prima facie* case but, as to the inference-of-discrimination element, it did not point to any specific evidence on which it relied, noting only that Grant "provided some facts that raise an inference of discrimination based on race and age." Viewing the evidence in the light most favorable to Grant, we consider whether he provided sufficient probative evidence on this element of his *prima facie* case to permit a finding in his favor on his discrimination claims.

To establish that a similarly situated employee not in his protected class was treated more favorably, Grant was first required to identify an employee who was "similarly situated in all relevant respects." Young, 754 F.3d at 578. Grant failed to identify any such employee. He noted that between January 2012 and February 2014, six other employees of the Street Department, two white and four black, were discharged or left their employment. But Crawford, the decisionmaker in Grant's termination, did not begin working as the City's Public Works Director until August 2, 2012, and thus we fail to see the relevance of employment decisions prior to that date. The City's records indicate that eight employees left the Street Department between August 2012 and February 2014, four black and four white. Of those eight, four were discharged or terminated, and four retired or resigned. Of the four who were discharged or terminated, three were black, one was white, and all four were over the age of forty. Of the three black employees, the "Reason for Leaving" noted for two was "No call/No show" and for the other was "Walked off the job." The

"Reason for Leaving" noted for the white employee was "Insubordination." Grant's brief provides no explanation regarding what specific jobs any of these individuals held and no reference to any evidence in the record that provides such information.

In any event, the employees identified by Grant were not similarly situated but treated more favorably. Like Grant, all of these employees were discharged. The three black employees who were discharged did not engage in similar conduct, and the one white employee who engaged in similar conduct was also fired. Although it is not clear from Grant's brief, the argument appears to be that discrimination may be inferred from this evidence because more older black employees were discharged than older white employees, but, as noted by the district court, the Street Department employed more black workers than white workers. This evidence instead shows that Crawford fired both black and white employees, which we view as reflective of an absence of discriminatory motive. Moreover, Walker, the employee who was assigned to drive the truck instead of Grant, was, like Grant, black and over forty, which is further evidence that neither age nor race bias was a factor in Crawford's decision to terminate Grant. This evidence, then, tends to refute any inference of discrimination.

While it is true that, at the time Grant was discharged, only one of nineteen City departments was managed by a black employee, Grant's brief provides no explanation of how this information is relevant, except to include it among the circumstances that are claimed to establish an inference of discrimination. It is also suggested that an inference of discrimination may be drawn from the "disparity between blacks and whites in pay and preferred job assignments" and the City's "history of . . . giving good jobs to whites and hiring blacks for the garbage trucks," but again, the brief does not refer to any evidence in the record to substantiate these allegations. "The mere recitation of statistics, . . . 'without some evidence tending to show that they indicate a meaningful phenomenon,' does not show discriminatory motive." Noreen, 833 F.3d at 994.

-10-

Grant's brief cites the Street Department's demographics, the argument being that in 2012 the Street Department was "an aging workforce comprised of 48 workers, 22 white and 26 black, whose ages were 19 employees over 55 years old, 7 over 60 years old, and 7 over age 70." But no details are presented to explain how these statistics are relevant. "[F]or statistical evidence to be probative . . . , it must analyze the treatment of comparable employees." Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 958 (8th Cir. 2001). There is no explanation of what positions these employees held or whether any of them were fired in similar circumstances or engaged in similar conduct and were not fired. And this data, without substantiation and without further analysis, does not demonstrate a pattern of discrimination against older black workers. See Noreen, 833 F.3d at 994 (noting that "[v]ariables other than impermissible motive could account for the changing demography of the workforce" and that an employee must show that the "numbers are statistically significant"). In sum, because Grant's brief identifies no similarly situated employee outside Grant's protected class who was treated more favorably by the City, the inference-of-discrimination element of Grant's *prima facie* case has not been established on this basis.

We have also stated that evidence of biased comments by a decisionmaker may be used to satisfy the inference-of-discrimination element of a plaintiff's *prima facie* case. See Pye, 641 F.3d at 1019. Grant produced no evidence of any discriminatory remark uttered by Crawford, much less one that can be linked to his discharge. Grant admitted in his deposition that he never heard Crawford say anything derogatory about black people or elderly people. Grant also acknowledged that he had never filed a verbal or written complaint about any allegedly discriminatory comment made by Crawford. Indeed, when Crawford learned of another employee's use of racial slurs, Crawford fired that employee. Although Grant testified that he "felt" that he was not being treated fairly by Crawford and that Crawford harbored race and age animus because of the way Crawford spoke to him, Grant could not recount any specific comment made by Crawford that caused him to feel that way. Grant thus failed to

identify any biased comments made by a decisionmaker that might establish an animus-based inference of discrimination.

Evidence that an employer failed to follow its own policies may show pretext at the inference-of-discrimination stage of a *prima facie* case, but Grant admitted that the City had an at-will-employment policy and an employee handbook providing "for disciplinary action that included, but was not limited to a warning or reprimand, suspension, demotion and termination without a requirement for any type of disciplinary procedure before termination." Although Grant's brief contends that the handbook and the at-will employment policy were "confusing and contradictory," Grant produced no evidence that the City failed to follow a policy set forth in the employee handbook or elsewhere in making the decision to discharge him. The brief refers to the term "step discipline" and Crawford's unfamiliarity with the term, but it also acknowledges that the employee handbook does not require the use of an escalating-discipline procedure and is, in fact, "silent concerning step discipline." There has been no showing that the City failed to follow any applicable policy in making the decision to fire Grant and no inference of discrimination has been established on this basis.

Evidence that an employer "shifted its explanation of the employment decision" may also be sufficient to show pretext at the inference-of-discrimination stage of a plaintiff's *prima facie* case. Young, 754 F.3d at 578. As evidence that the City's reason for firing him shifted, the brief points to statements made by Judy Andrews, the City Personnel Director, in connection with Grant's separate proceeding for unemployment benefits before the ADWS, alleging that those statements differ from Andrews's deposition testimony in this matter. While a change in an employer's legitimate, nondiscriminatory reason for firing an employee may establish pretext, "the[] discrepanc[y] must actually be substantial." Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012). Here, any discrepancy in Andrews's statements was inconsequential. Andrews submitted a written statement to ADWS, which suggested that she had

personally witnessed the conversation between Grant and Crawford that preceded Grant's discharge.  In her deposition, however, she testified that she had not been present to witness this conversation but instead had based her statement to ADWS on a later conversation she had had with Crawford.  The substance of Andrews's statements—that Grant disobeyed an order from Crawford—never changed.  The City consistently cited insubordination as its reason for firing Grant, and thus there is no record-based shifting-reasons basis for an inference of discrimination.

Viewing the evidence in the light most favorable to Grant and drawing all reasonable inferences in his favor, we conclude that Grant failed to substantiate his claims of race and age discrimination with sufficient probative evidence to permit a rational trier of fact to find in his favor.  Although an employee's burden to establish a *prima facie* case of discrimination "is not onerous," <u>Torgerson</u>, 643 at 1046-47, Grant failed to carry his burden, and the district court did not err in granting summary judgment to the City.  Because the district court committed no error of law in granting summary judgment to the City and because no miscarriage of justice occurred, the district court did not abuse its discretion in denying Grant's motion for reconsideration.  <u>See</u> <u>Anderson v. Family Dollar Stores of Ark., Inc.</u>, 579 F.3d 858, 861-62 (8th Cir. 2009) (reviewing underlying summary judgment order *de novo*, but reviewing denial of a motion to reconsider under Rule 59(e) for abuse of discretion).

The judgment is affirmed.

_____

-13-