# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 22-1630

———————————————

Maria Mayorga

*Plaintiff - Appellant*

v.

Marsden Building Maintenance LLC

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Central

——————————

Submitted: September 20, 2022
Filed: December 20, 2022

——————————

Before SHEPHERD, KELLY, and GRASZ, Circuit Judges.

——————————

KELLY, Circuit Judge.

Maria Mayorga sued her former employer, Marsden Building Maintenance, L.L.C., alleging wage discrimination, sex discrimination, and retaliation in violation

of the Iowa Civil Rights Act (ICRA).  Mayorga now appeals the district court's[1] grant of summary judgment in favor of Marsden.  We affirm.

## I.

Marsden, a commercial cleaning company, hired Mayorga as a general cleaner in 2013.  Mayorga was paid $12 an hour and performed basic janitorial tasks, such as cleaning and sanitizing, vacuuming, and trash disposal.  Mayorga left Marsden in 2014 but returned to the company in 2018.  Upon return, Mayorga remained a general cleaner and was paid the same rate.  Mayorga was also given additional responsibilities as an assistant manager, whereby she inspected the work of other general cleaners.

In December 2019, Mayorga took a personal leave of absence from Marsden. By the time Mayorga returned, her position had been filled,[2] but Marsden wanted to retain her because she was a "hard worker."  Marsden had a general cleaner/floater position available, but it only paid $9 or $10 an hour.  There was also a position available in the special services department.  That position, however, required technical knowledge of machinery, and the job's responsibilities included heavy-duty cleaning, such as stripping and waxing floors, carpet cleaning and extractions, power washing, grout cleaning, and emergency cleanup.  The hourly wage for special services employees was between $13 and $15, and most employees in the department were men.  Yerko Mena, Mayorga's direct supervisor, suggested to Marsden that Mayorga might be "an option" for the position, as he knew she had some experience in floor work and she could be trained on the rest of the position's responsibilities.  When Mena gave Mayorga a choice, she accepted the position in special services over the general cleaner/floater position because she knew the hourly pay for the special services position started at $13.  Marsden, however,

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]Mayorga does not challenge Marsden's decision to fill her position.

intended to keep Mayorga at the same rate of pay as her previous general cleaner position until another position opened up or until she was trained on the equipment used in special services.

Mayorga returned to work in January 2020. Before her first shift, Mayorga met with Gabriel Velasquez, Marsden's operations manager. Velasquez initially told Mayorga there were no open positions available. Mayorga countered that Mena had told her about the special services position and that she had seen an external posting for a job at Marsden. Velasquez briefly left the room, and when he returned, he told Mayorga she could start in special services. But he explained the job was temporary until Marsden found Mayorga another position. Mayorga asked Velasquez whether her rate of pay would be $13 an hour, and he replied, "[Y]es, but with experience."

Around the same time, Marsden hired three other special services employees, including two men, Christopher Wright and Miguel Cabezas. Wright started at $13 an hour. Wright had worked for a different cleaning company, where he had gained some experience in special services, and he could operate all the machines Marsden used. Cabezas started at $14 an hour. Cabezas had at least 12 years of experience cleaning warehouse floors and he also had experience in special services.

Soon after starting her new position, Mayorga received her first paycheck and saw that she had only been paid $12 an hour. Mayorga thought she would be paid $13 an hour. Mayorga asked her special services manager, Aaron Foley, to speak to Velasquez about her wages on her behalf. After Foley's efforts were unsuccessful, Mayorga decided to speak with Velasquez herself. On February 3, 2020, Mayorga met with Velasquez and asked to be paid $13 an hour, based on the $13- to $15-an-hour range for the special services position. Velasquez explained the higher rate of pay was only for employees with experience, and that Mayorga could not be paid at that rate because she was "not fully trained on all the equipment" used by special services. Mayorga asserted she had sufficient experience based on her previous work as a general cleaner at Marsden. Velasquez said he would see what he could

do.  Velasquez later met with Foley, who said Mayorga still had "a lot to learn" and needed more training.

A week later, Mayorga and Velasquez met again.  Mayorga told Velasquez she wanted a final answer regarding a raise to $13 an hour.  Velasquez told her he would not give her a raise and that she could "take it or leave it."  The two began to argue.  The conversation heated up, and Velasquez eventually told Mayorga, "[G]et out of here.  You don't have a job anymore."  Mayorga asked if she was being fired, and Velasquez said "yes."

On May 18, 2020, Mayorga filed a complaint with the Iowa Civil Rights Commission.  After exhausting her administrative remedies, Mayorga filed suit in Iowa state court on November 5, 2020, alleging wage discrimination, sex discrimination, and retaliation in violation of the ICRA, Iowa Code §§ 216.6, 216.6A, 216.11.  Mayorga alleged that she was paid less than her male colleagues, though she performed the same work, and that she was terminated because she was a woman.  Mayorga also alleged that after she complained to Marsden about the unequal wages, Marsden retaliated against her by terminating her position.  Marsden removed the case to federal court, and the district court subsequently granted summary judgment in Marsden's favor.  Mayorga appeals the grant of summary judgment on her wage and sex discrimination claims.

II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 229 (8th Cir. 2011).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Meyer v. McKenzie Elec. Coop., Inc., 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a).  To defeat summary judgment, "the nonmoving party must come forward with specific facts showing that there is a

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up).

III.

A.

Mayorga first argues that the district court erred in granting summary judgment on her wage discrimination claim. The ICRA prohibits employers from paying unequal wages to employees on the basis of their sex. See Iowa Code § 216.6A. To establish a prima facie claim of sex-based wage discrimination under the ICRA, a plaintiff must show that "(1) she was paid less than a male employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) which were performed under similar working conditions." Dindinger v. Allsteel, Inc., 853 F.3d 414, 421–22 (8th Cir. 2017) (quoting Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002)).[3] The jobs need not be identical to be considered "equal," they need only be substantially equal. Hunt, 282 F.3d at 1029. And neither job classifications nor titles are dispositive. Id.

Once a plaintiff makes out a prima facie case, the burden shifts to the employer to establish one of four enumerated affirmative defenses. An employer may justify the wage differential by showing that the disparity was based on (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) "any other factor other than" the sex of the employee. Iowa Code § 216.6A(3). But an employer "cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action."

---

[3]The ICRA was modeled after Title VII of the Civil Rights Act. Vivian v. Madison, 601 N.W.2d 872, 873 (Iowa 1999). Therefore, when interpreting discrimination claims arising under the ICRA, Iowa courts "turn to federal law" for guidance. Deboom v. Raining Rose, Inc., 772 N.W.2d 1, 7 (Iowa 2009); see Dindinger v. Allsteel, Inc., 860 N.W.2d 557, 564–65 (Iowa 2015) (looking to the federal Equal Pay Act to interpret wage discrimination claims under Iowa Code § 216.6A).

Taylor v. White, 321 F.3d 710, 716 (8th Cir. 2003).  Rather, an employer must "prove that the pay differential was based on a factor other than sex."  Id.

Assuming, without deciding, that Mayorga established a prima facie case of sex-based wage discrimination, we agree with the district court that Marsden sustained its burden of proving an affirmative defense: that the difference between Mayorga's pay and that of the two male comparators, Wright and Cabezas, was justified based on the employees' prior work experience.

A "differential that is based on education or experience is a factor other than sex."  Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1081 (8th Cir. 1999). Marsden considered prior experience during the hiring process, and experience was generally used to set wages.  Here, the evidence established that Wright and Cabezas had more relevant experience than Mayorga when they were hired into special services.  Wright had operated the machinery used by Marsden in a previous special services position with another company, and Cabezas had over a decade of experience in cleaning services and special services combined.  Mayorga, in contrast, had worked in general cleaning services only, had no experience in special services, and had to learn how to use some of the special services equipment. Mayorga testified that she was learning on the job, but she points to no evidence that creates a factual dispute about her male counterparts' prior experience at the time of hire.

On this record, Marsden has met its burden to prove the pay differential between Mayorga and her male counterparts was based on a factor other than sex. See Schottel v. Neb. State Coll. Sys., 42 F.4th 976, 982 (8th Cir. 2022) (finding the employer offered sufficient evidence that a pay differential was based on a factor other than sex where the male comparator had five years more teaching experience and seven years more relevant professional experience than the female plaintiff); Hutchins, 177 F.3d at 1081 (holding that the employer proved its affirmative defense where, compared to the female plaintiff, each male comparator had one or more additional qualifications at the time of their hire, including "more experience in

organizing; more formal education, particularly in the area of labor and employment; more union experience; and union experience at higher levels").[4]

B.

Mayorga also argues that the district court erred in granting summary judgment to Marsden on her sex discrimination claim. The ICRA prohibits discrimination in employment based on an applicant's or employee's sex. See Iowa Code § 216.6(1)(a). To survive summary judgment, Mayorga may offer direct evidence of discrimination or create an inference of it under the burden-shifting framework established in McDonnell Douglas. See Ames v. Nationwide Mut. Ins. Co., 760 F.3d 763, 767 (8th Cir. 2014); Smidt v. Porter, 695 N.W.2d 9, 14 (Iowa 2005).

Because Mayorga has not presented any direct evidence of discrimination, we analyze her claim under the McDonnell Douglas burden-shifting framework. Cf. Findlator v. Allina Health Clinics, 960 F.3d 512, 514 (8th Cir. 2020) ("Direct evidence consists of a specific link between a challenged decision and discriminatory animus."). Under this framework, the plaintiff has the initial burden of making a prima facie case of discrimination. See Grant v. City of Blytheville, 841 F.3d 767, 773 (8th Cir. 2016). If she makes a prima facie case, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason is a pretext for discrimination. Id.

_____

[4]Mayorga maintains that even if Marsden has proved the wage differential was based on experience, Marsden's rationale is pretextual. But the "analytical framework" for a wage discrimination claim "differs from" the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting analysis. Taylor, 321 F.3d at 716; see also Price v. N. States Power Co., 664 F.3d 1186, 1192 (8th Cir. 2011). Instead, for a wage discrimination claim, "an employer will be entitled to summary judgment if it proves that any pay differential is explained by a statutory affirmative defense." Price, 664 F.3d at 1193.

The district court concluded that Mayorga failed to prove a prima facie case of sex discrimination, and that even if she did, there was insufficient evidence for a reasonable jury to find that Marsden's proffered reasons for Mayorga's termination were pretextual. To establish a prima facie case of sex discrimination under the ICRA, Mayorga must demonstrate that: (1) she belongs to a protected group, (2) she was qualified to retain the job, (3) she was terminated, and (4) it is "more likely than not" that the termination was based on sex. See Hamer v. Iowa C.R. Comm'n, 472 N.W.2d 259, 264 (Iowa 1991).

On appeal, only the fourth element of Mayorga's prima facie case is at issue. This element is satisfied if a plaintiff presents evidence that "the discharge occurred under circumstances giving rise to an inference of discrimination." Elam v. Regions Fin. Corp., 601 F.3d 873, 879 (8th Cir. 2010) (quotations omitted). Reasonable inferences are those that can be drawn from the evidence without resort to speculation. Id. at 877. A plaintiff can establish an inference of discrimination in multiple ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class, biased comments by a decisionmaker, or that the employer failed to follow its own policies or shifted its explanation of the employment decision. See Grant, 841 F.3d at 774.

Mayorga asserts that Velasquez was motivated by bias. More specifically, she claims that Velasquez terminated her because "he could not tolerate being challenged by a woman." However, Mayorga offers no evidence to support this allegation. Mayorga also takes issue with how Velasquez conducted himself in the role of operations manager. But none of the evidence she presented supports a reasonable inference that Velasquez's decision to fire her is "more likely than not" explained by an intent to discriminate against her on the basis of her sex.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____