**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0396**

Nicole LaPoint,
Appellant,

vs.

Family Orthodontics, P. A.,
Respondent.

**Filed December 14, 2015
Reversed and remanded
Kirk, Judge**

Hennepin County District Court
File No. 27-CV-13-18122

Steven Andrew Smith, Bonnie M. Smith, Nichols Kaster, PLLP, Minneapolis, Minnesota (for appellant)

Marshall H. Tanick, Teresa J. Ayling, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

**S Y L L A B U S**

A prospective employee directly proved that an employer unlawfully discriminated against her on the basis of sex, where, inter alia, the employer repeatedly articulated two reasons for rescinding the prospective employee's job offer: (1) her failure to disclose her pregnancy at the job interview and (2) the length of her desired maternity leave.

**O P I N I O N**

**KIRK**, Judge

In this appeal from judgment following a court trial of a pregnancy-discrimination claim under the Minnesota Human Rights Act, a prospective employee asserts that the district court erred by determining that she failed to prove her claim. Because we conclude that, as a matter of law, the prospective employee directly proved her claim by a preponderance of the evidence, we reverse and remand for a determination of damages.

**FACTS**

Respondent Family Orthodontics, P.A. (Family Orthodontics) is owned and operated by Dr. Angela Ross, D.M.D., a practicing orthodontist with nine employees. Appellant Nicole LaPoint is an orthodontic assistant with approximately seven years of experience in the dentistry and orthodontics profession.

In early 2013, Family Orthodontics had a job opening for an orthodontic assistant. At that time, Family Orthodontics had a policy, drafted by Dr. Ross, that a maternity leave "of up to 6 weeks may be granted." Upon learning of LaPoint's interest in the job from a current employee, Dr. Ross called LaPoint about the position on March 17. LaPoint confirmed her interest in the position and sent Dr. Ross her resume.

On March 22, Dr. Ross interviewed LaPoint. The interview went well. The topic of pregnancy was not raised by either party. On the afternoon of March 24, Dr. Ross left LaPoint a voicemail offering her the job, along with LaPoint's requested hourly wage and vacation time. LaPoint called Dr. Ross and accepted the position that evening,

2

confirming a start date of April 8.  She also informed Dr. Ross that she was pregnant and due to deliver in October 2013.

After congratulating LaPoint on her pregnancy, Dr. Ross asked whether she planned to return to work after the baby was born.  LaPoint assured Dr. Ross that she intended to do so and that she had already arranged daycare.  Dr. Ross then asked LaPoint how much maternity leave she had taken for her first child.  LaPoint responded that she had taken 12 weeks.  Dr. Ross expressed doubt that her practice could handle the disruption of a 12-week leave.  She informed LaPoint that her maternity-leave policy was six weeks, and mentioned that several employees had taken leaves of that length. LaPoint said that she would consider taking a shorter leave.  At trial, a copy of LaPoint's resume was admitted into evidence.  Dr. Ross made the following handwritten notes on the resume upon learning of her pregnancy: "Due 10/13!  *Pregnant*?!"

The next morning, Dr. Ross left LaPoint a voicemail stating that she was "not going to offer [her] the job just yet" due to two concerns: LaPoint's failure to disclose her pregnancy during the job interview, and the length of LaPoint's desired maternity leave disrupting the practice.  Dr. Ross asked for "a few more days" to ensure that she was "comfortable with all this stuff."  If LaPoint had "answers to those two concerns," Dr. Ross asked LaPoint to call her.

The same day that she left this voicemail, Dr. Ross made handwritten notes on LaPoint's resume identifying two reasons for rescinding LaPoint's job offer.[1] Under the heading "3/25/13 8:15 a.m. MST," she wrote: "L/M [rescinding] offer & told her needed a few more days. 2 concerns: (1) why didn't she tell me in the interview? (2) will 3 mos maternity be too disruptive? Most took 6 wks[.]" Later that day, Family Orthodontics reposted its ad for the position on Craigslist.

On the afternoon of March 25, LaPoint e-mailed Dr. Ross, explaining that she had not yet disclosed her pregnancy to her family and that she informed Dr. Ross as a "loyal employee who has the office's best interest at heart." LaPoint "reiterat[ed her] plans" to continue working after her baby's birth, and expressed excitement about a "long-term career" with Family Orthodontics. She also wrote that she "strongly hope[d]" that Dr. Ross would "rethink [the] withdrawal of the job." Dr. Ross replied to LaPoint's e-mail the next day, listing the same "two concerns" motivating her decision to rescind the job offer. Dr. Ross promised to "be in touch" when she returned from vacation. LaPoint e-mailed Dr. Ross the next day, stating that she "look[ed] forward to speaking with" her upon her return from vacation "to clarify the two points [Dr. Ross] made."

---

[1] We refer to rescission of a job offer rather than of a job because, despite LaPoint's acceptance of the offer, the record does not indicate that there was a contract of employment. *See Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981) (holding that contract of employment did not exist between pharmacist and health clinic, despite pharmacist's acceptance of clinic's offer of employment, where pharmacist had not commenced work and both had power to terminate agreement at will).

4

Dr. Ross did not contact LaPoint again. On May 20, 2013, Dr. Ross hired a non-pregnant, former Family Orthodontics intern and recent graduate to fill the orthodontic assistant position, at the urging of her dental assistants.

At trial, Family Orthodontics presented evidence that other employees had taken leaves related to childbirth of six weeks or less, and that such leaves created difficulties for the clinic. It also presented evidence that two employees were visibly pregnant when they were hired in 2000 and 2008, and that the employee hired in 2008 did not return to work after her maternity leave. Family Orthodontics argued that Dr. Ross withdrew the job offer due to her concern about the difficulties the clinic would experience if LaPoint took more than six weeks of maternity leave, not due to LaPoint's pregnancy.

Following trial, the district court concluded that LaPoint failed to prove her claim. It found that "Dr. Ross credibly testified that she was not upset about [LaPoint]'s pregnancy but questioned why [LaPoint] did not bring it up initially so they could discuss leave of absence issues at that time. Her concern was the length of the leave sought by [LaPoint] on the practice." It further found that Dr. Ross and three of her employees "credibly testified as to the disruption a lengthy leave of absence would cause the clinic." Consistent with Family Orthodontics's arguments, the district court described the disruption as Dr. Ross's "overriding concern."

LaPoint brought a motion for judgment as a matter of law (JMOL), amended findings, and a new trial, which the district court denied in its entirety. She appeals.

5

**ISSUE**

Did the district court err by concluding that LaPoint failed to prove that Family Orthodontics unlawfully discriminated against her based upon her pregnancy?

**ANALYSIS**

"[W]e review the district court's factual findings for clear error. That is, we examine the record to see if there is reasonable evidence" supporting the court's findings. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotations and citations omitted). "[D]ue regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. We review issues of law de novo. *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 18 (Minn. 2012).

The Minnesota Human Rights Act (MHRA) prohibits an employer from discriminating against a person with respect to hiring on the basis of sex. Minn. Stat. § 363A.08, subd. 2 (2014). "Sex" is expressly defined to include "pregnancy, childbirth, and disabilities related to pregnancy or childbirth." Minn. Stat. § 363A.03, subd. 42 (2014). It is also an unlawful, unfair employment practice for an employer to "require or request" that a job applicant "furnish information that pertains to . . . sex . . . ." Minn. Stat. § 363A.08, subd. 4(a)(1) (2014). MHRA claims must be proved by a preponderance of the evidence. *Ridler v. Olivia Pub. Sch. Sys. No. 653*, 432 N.W.2d 777, 783 (Minn. App. 1988).

LaPoint asserts her discrimination claim under a disparate-treatment theory, which requires her to prove that her pregnancy "actually motivated" Family Orthodontics's

6

decision to rescind the job offer. *Goins v. West Group*, 635 N.W.2d 717, 722 (Minn.

2001); *see also Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 624

(Minn. 1988) (holding that the protected trait must be "a substantial causative factor").

Family Orthodontics argues that this standard requires pregnancy to be the "but for"

reason for its conduct, i.e., that it would not have made the same decision absent

pregnancy discrimination. However, that standard for "mixed motive" cases was rejected

by the Minnesota Supreme Court in *Anderson*, which explained that:

> [I]ts adoption for use in disparate treatment cases would
> defeat the broad remedial purposes of the Minnesota Human
> Rights Act by permitting employers, definitionally guilty of
> prohibited employment discrimination, to avoid all liability
> for the discrimination provided they can prove that other
> legitimate reasons may coincidentally exist that could have
> justified the [employment decision].

*Anderson*, 417 N.W.2d at 626.[2] *Anderson* holds that, "even if an employer has a

legitimate reason for the [employment decision], a plaintiff may nevertheless prevail if an

illegitimate reason 'more likely than not' motivated the [] decision." *McGrath v. TCF*

---

[2] Following *Anderson*, the United States Supreme Court held in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242, 109 S. Ct. 1775, 1786 (1989), that, in Title VII cases, even if the employee demonstrates that an employer considered an impermissible factor, the employer may avoid liability by showing it would have made the same decision even without consideration of that factor. The Civil Rights Act of 1991 modified the *Price Waterhouse* analysis by providing that, in "mixed motive" cases, liability occurs if discrimination was a motivating factor in the employer's decision, even if the employer was also motivated by a legitimate, nondiscriminatory reason. 42 U.S.C. § 2000e-2(m) (2012). If the employer can demonstrate that it would have made the same decision even if it had not considered the impermissible factor, however, the employee's remedies are limited to injunctive and declaratory relief and, in appropriate cases, reasonable attorney fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B) (2012). The *Price Waterhouse* analysis has not been applied to the MHRA.

*Bank Sav., FSB*, 509 N.W.2d 365, 366 (Minn. 1993) (quoting *Anderson*, 417 N.W.2d at 627).

There are two methods of proving an employment-discrimination claim asserting disparate treatment: the direct-evidence method and the burden-shifting analysis first articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See, e.g.*, *Goins*, 635 N.W.2d at 722-24 (contrasting two methods of proof). Because LaPoint presented direct evidence of discrimination, it is not necessary to apply the *McDonnell Douglas* analysis. *Diez v. Minn. Mining & Mfg.*, 564 N.W.2d 575, 579 (Minn. App. 1997), *review denied* (Minn. Aug. 21, 1997); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112, 105 S. Ct. 613, 617 (1985).

Cases decided under the direct-evidence framework for proving a disparate-treatment claim are "adjudicated based on the strength of affirmative evidence of discriminatory motive." *Friend v. Gopher Co.*, 771 N.W.2d 33, 38 (Minn. App. 2009). A plaintiff may prove a claim under this "direct method" through either direct or circumstantial evidence, or a combination of the two. *Id.* at 40 (noting that "Minnesota law makes no distinction between circumstantial and direct evidence as to degree of proof required.") (quotation omitted); *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-101, 123 S. Ct. 2148, 2153-55 (2003) (holding that circumstantial evidence can support a mixed-motive, disparate-treatment claim under Title VII).

"Direct evidence of an employer's discriminatory motive shows that the employer's discrimination was purposeful, intentional, or overt." *Goins*, 635 N.W.2d at

8

722. Stated differently, "[d]irect evidence is evidence showing a *specific link* between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (quotation omitted) (emphasis added). "In this context, whether evidence is direct depends on its causal strength." *Id.* at 1152-53.

Here, there is extensive evidence in the record that Family Orthodontics discriminated against LaPoint on the basis of her pregnancy in a purposeful, intentional, and overt manner. *See Goins*, 635 N.W.2d at 722. On three occasions, Dr. Ross articulated two reasons for withdrawing the job offer: failure to disclose the pregnancy at the interview and the disruption of a long maternity leave. This constitutes traditional direct (as opposed to circumstantial) evidence. The first reason is based at least substantially upon pregnancy and is illegitimate, as it punishes LaPoint for failing to disclose a fact about which Family Orthodontics could not lawfully inquire. *See* Minn. Stat. § 363A.08, subd. 4(a)(1) (prohibiting an employer from requiring or requesting that a job applicant provide information pertaining to sex); Minn. Stat. § 363A.04 (2014) (stating that the MHRA shall be construed liberally for accomplishment of its purposes); *Huisenga v. Opus Corp.*, 494 N.W.2d 469, 472-74 (Minn. 1992) (barring employer from using job applicant's answers collected in violation of the MHRA to defend itself against workers' compensation claim). The second reason is very closely related to LaPoint's pregnancy, as her anticipated maternity leave was due to her pregnancy. The district

9

court's findings confirm that the reasons Dr. Ross articulated in her communications with LaPoint motivated her decision to withdraw the job offer.

In addition, there is ample circumstantial evidence indicating that LaPoint's pregnancy motivated Family Orthodontics's decision to rescind the job offer. *See Goins*, 635 N.W.2d at 722. For example, Dr. Ross wrote "*Pregnant*?!" and "Due 10/13!" on LaPoint's resume immediately after she disclosed her pregnancy. The last pregnant woman Family Orthodontics hired did not return to work after childbirth, and, upon learning of LaPoint's pregnancy, Dr. Ross asked about LaPoint's intention to return. Although LaPoint stated that she would consider taking a shorter leave, Dr. Ross never offered her the job contingent upon a leave no longer than six weeks or even contacted her to discuss the issue further.[3] Shortly after learning of LaPoint's pregnancy, Family Orthodontics reposted the ad for the position. Finally, it ultimately hired a non-pregnant woman without commensurate experience to fill the position.

Taken as a whole, the evidence and the district court's findings show a specific link between LaPoint's pregnancy and the rescission of the job offer. *See Diez*, 564 N.W.2d at 579; *Ramlet*, 507 F.3d at 1152. If the length of the leave was Family

---

[3] Because Family Orthodontics has fewer than 50 employees, it is never required to allow a 12-week maternity leave under the Family Medical Leave Act (FMLA) of 1993, 29 U.S.C. §§ 2601 to 2654 (2012). *See* 29 U.S.C. § 2611(4)(A)(i) (limiting "employer" for purposes of FMLA to those with 50 or more employees); 29 U.S.C. §§ 2612(a)(1)(A), 2615(a) (providing eligible employees up to 12 weeks of unpaid maternity leave and prohibiting employers from interfering with, restraining, or denying the exercise of or the attempt to exercise FMLA rights or discharging an individual for opposing any practice made unlawful by the FMLA).

Orthodontics's sole concern, it could have simply alerted LaPoint to the maternity-leave policy upon learning of her pregnancy, allowing her to choose whether to accept employment on those terms. In the face of the robust affirmative evidence, the district court erred in concluding that LaPoint failed to prove that her pregnancy was a substantial causative factor in Family Orthodontics's decision. *See Anderson*, 417 N.W.2d at 624.

## DECISION

Because the district court erred in concluding that LaPoint failed to prove her pregnancy-discrimination claim, the judgment in favor of Family Orthodontics is reversed and the matter is remanded for a determination of damages.

**Reversed and remanded.**