**Nicole LAPOINT, Respondent,**

v.

**FAMILY ORTHODONTICS,
P.A., Appellant.**

**A15-0396**

Supreme Court of Minnesota.

Filed: April 5, 2017

Court of Appeals

Steven A. Smith, Nichols Kaster, PLLP, Minneapolis, Minnesota, for respondent.

Marshall H. Tanick, Teresa J. Ayling, Hellmuth & Johnson, PLLC, Edina, Minnesota, for appellant.

Lori Swanson, Attorney General, Margaret Jacot, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae Commissioner of the Department of Human Rights.

Douglas A. Micko, Marisa C. Katz, Brian Rochel, Teske Micko Katz Kitzer & Rochel, PLLP, Minneapolis, Minnesota; and Frances E. Baillon, Baillon Thome Jozwiak & Wanta, LLP, Minneapolis, Minnesota, for amicus curiae National Em-

ployment Lawyers Association-Minnesota Chapter.

Leslie L. Lienemann, Culberth & Lienemann, LLP, Saint Paul, Minnesota; and Justin D. Cummins, Cummins & Cummins, LLP, Minneapolis Minnesota, for amicus curiae Employee Lawyers Association of the Upper Midwest.

Jill R. Gaulding, Lisa C. Stratton, Christy L. Hall, Saint Paul, Minnesota, for amicus curiae Gender Justice.

Margaret R. Ryan, Jacalyn N. Chinander, Meagher & Geer, PLLP, Minneapolis, Minnesota; and William J. Davidson, Lind, Jensen, Sullivan & Peterson, PA, Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

Gildea, C.J.

The question presented in this case is whether appellant, Family Orthodontics, P.A., discriminated against respondent Nicole LaPoint. LaPoint applied for a job with Family Orthodontics and Family Orthodontics' owner, Dr. Angela Ross, offered LaPoint a job as an orthodontic assistant. After LaPoint told Dr. Ross that she was pregnant, and they discussed the amount of leave available for LaPoint's pregnancy, Family Orthodontics rescinded its job offer. LaPoint sued Family Orthodontics for sex discrimination under the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01-.44 (2016), claiming that Family Orthodontics discriminated against her because of her pregnancy. After a bench trial, the district court entered judgment for Family Orthodontics, concluding that Dr. Ross's decision was not discriminatory. The court of appeals reversed, ruling as a matter of law that Family Orthodontics had discriminated against LaPoint. Because we conclude that the district court's findings are not clearly

erroneous but that faulty legal reasoning may have impacted the findings, we reverse and remand.

This action arises from LaPoint's application to work as an orthodontic assistant at Family Orthodontics. Family Orthodontics is a small orthodontics clinic that Dr. Angela Ross owns and operates. In early 2013, Family Orthodontics had a job opening for an orthodontic assistant. LaPoint is an experienced orthodontic assistant and an employee at the clinic recommended LaPoint for the position. Dr. Ross reached out to LaPoint and asked her to interview. Dr. Ross interviewed LaPoint on the evening of Friday, March 22, 2013. The parties agree that the interview went well. LaPoint requested pay of $25-$27 per hour and two weeks of vacation time. Dr. Ross did not ask LaPoint whether she was pregnant, and the topic of pregnancy did not come up.

Dr. Ross then left for a family vacation out of state. On Sunday, March 24, two days after the interview, Dr. Ross left LaPoint a voicemail offering her the job. Later that day, LaPoint called Dr. Ross and accepted the offer. During that conversation, LaPoint told Dr. Ross that she was pregnant and due in October.

Dr. Ross congratulated LaPoint and said that she was happy for her. Dr. Ross asked LaPoint if she intended to return to work after giving birth; LaPoint said that she did. Dr. Ross asked her how much maternity leave she had taken after the birth of her first child, and LaPoint said that she had taken 12 weeks. Dr. Ross inferred that LaPoint would want 12 weeks of leave for her upcoming birth, and told LaPoint that Family Orthodontics had a policy of allowing no more than 6 weeks of maternity leave. LaPoint responded that she might be willing to take a shorter leave, and said that she would consider 10 weeks.

On March 25, the morning after LaPoint called to accept the job, Dr. Ross left a voicemail for LaPoint. In the voicemail, Dr. Ross stated that she "did not sleep very well" the night before, and that she was "not going to offer [LaPoint] the job just yet" because she needed "a couple more days to figure this out." Dr. Ross also said:

> Frankly, two things really kept me from sleeping well. One of them is why you didn't tell me on Friday that you were pregnant, I'm just I just can't figure that piece out.... And the other thing is that I have to make sure that after training you for six months, that you going on leave for three months is not going to disrupt the practice.

Dr. Ross said that she was going to put the job offer "on hold." She invited LaPoint to contact her if she had "some answers to those two concern[s]."

Later that same morning, Family Orthodontics reposted an ad on Craigslist for the orthodontic assistant position. Dr. Ross later testified that she posted the ad in order to seek additional candidates in the event that LaPoint was not hired.

LaPoint responded by e-mail to Dr. Ross's voicemail, explaining that she had not told Dr. Ross about the pregnancy at the interview because it was still in an early stage, and she had not even told her family yet. LaPoint wrote that she had disclosed the pregnancy after accepting the offer as "the action of a loyal employee who has the office's best interest at heart." She assured Dr. Ross that she planned to return to work after the birth. LaPoint did not discuss the length of the leave in this e-mail.

The next day, Dr. Ross sent an e-mail to LaPoint. She wrote: "I think there was somewhat of a misunderstanding. The reason why I withdrew the job offer yesterday (Monday) morning was because I had

two concerns." First, Dr. Ross said that she was "confused" about why LaPoint told her about the pregnancy after the job offer "but did not say anything during [their] face to face interview" on Friday. Second, she stated that employees at Family Orthodontics "typically take off 6 weeks" for maternity leave, and she was not sure that "a small practice" like hers could handle LaPoint's "requested 12 weeks off." Dr. Ross thanked LaPoint for her email and wrote that she would "be in touch" when she returned from vacation. The following day, LaPoint sent Dr. Ross a short email stating that she "look[ed] forward to speaking with [Dr. Ross] on the telephone upon [her] return from vacation to clarify the two points."

Dr. Ross did not call or send another e-mail to LaPoint. She testified that she was very busy after vacation, and that hiring "wasn't on [her] radar." LaPoint did not contact Dr. Ross again because she believed that "the ball was in [Dr. Ross's] court." In May, Dr. Ross eventually filled the orthodontic assistant position, hiring a recent graduate who had previously interned at Family Orthodontics. The new hire was not pregnant.

In the course of the communications described above, Dr. Ross made a number of notations on a copy of LaPoint's resume. Around the time LaPoint told Dr. Ross that she was pregnant, Dr. Ross wrote "Pregnant?!" and "Due 10/13!" on the resume. After she left the voicemail indicating that the job offer was "on hold," Dr. Ross wrote: "I L/M rescinding (rescinding) offer & told her needed a few more days. 2 concerns: (1) why didn't she tell me in the interview? (2) will 3 mos maternity be too disruptive? Most took 6 wks."

LaPoint sued Family Orthodontics under the MHRA, asserting that she was denied employment because of her preg-

nancy. The parties filed cross-motions for summary judgment, but the district court, concluding that there were material issues of fact, denied both motions and the matter proceeded to a bench trial.

At trial, Dr. Ross testified that she did not rescind the offer because LaPoint was pregnant. She testified that the decision "[h]ad to do with leave. Had to do with disruption to my practice." Dr. Ross stated that she interpreted LaPoint's offer to consider 10 weeks of leave as a refusal to accept the clinic's 6-week maternity leave policy. As a result, she withdrew the offer because a 10- or 12-week leave would not be "tenable" in her practice.

Dr. Ross also testified that she was concerned about LaPoint's failure to disclose the pregnancy during the interview because she would have preferred to discuss the policy at the interview, along with other leave issues. She stated that, had LaPoint been "forthright" about her maternity leave request, they could have determined earlier in the process that LaPoint was not a good fit for the clinic and that she needed to work for a bigger clinic to get the leave that she wanted. Dr. Ross's husband also testified and corroborated her testimony. In addition, several employees at Family Orthodontics testified that maternity leave was always difficult at the clinic and 12 weeks leave would have been too much to accommodate.

LaPoint also testified. She testified that she never demanded 12 weeks of maternity leave, and that she told Dr. Ross during the March 25 phone call that she would be willing to return to work more quickly than 12 weeks. But she did acknowledge on cross-examination that she "wanted or intended or anticipated" 12 weeks of leave. LaPoint also said that Dr. Ross did not tell her the clinic had a policy of allowing only 6 weeks of maternity leave or that the offer was contingent on her acceptance of taking only 6 weeks of leave.[1] If Dr. Ross had done so, LaPoint said that she would have accepted the offer.

Following a 2-day bench trial, the district court ordered judgment for Family Orthodontics. The court found that "Dr. Ross credibly testified that she was not upset about Plaintiff's pregnancy but questioned why Plaintiff did not bring it up initially so they could discuss leave of absence issues at that time. Her concern was the length of leave sought by Plaintiff on the practice." And the court found that

[i]n her interactions with Plaintiff, Dr. Ross did not demonstrate any animus toward Plaintiff because of her pregnancy. Her overriding concern was the disruption a twelve week maternity leave would have on her practice and the impact upon her employees should she deviate from the Clinic's longstanding policy of six weeks. This was reflected in her contemporaneous notes, her voicemail messages, her discussions with her husband, and the testimony of Clinic employees of the effect such a leave of absence [would have] on their workload.

Based on its factual findings, the district court concluded that Family Orthodontics did not discriminate against LaPoint based on pregnancy. Citing our decision in *Goins v. W. Grp.*, 635 N.W.2d 717, 722 (Minn. 2001), the court stated that LaPoint had to prove that her pregnancy "actually motivated" Family Orthodontics' decision not to hire her. It concluded that LaPoint had not proven her case, either through direct evidence or through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), an anal-

1. Dr. Ross admits she did not make such an offer.

ysis we endorsed in, among other cases, *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 623-24 (Minn. 1988).

Under the direct method of proof, the district court first summarized the evidence suggesting that Dr. Ross was concerned about the length of leave that she believed LaPoint expected or demanded. The court then explained:

> Although Dr. Ross'[s] handwritten notes, voicemail, and follow-up email to Plaintiff cited Plaintiff's failure to disclose her pregnancy during the interview as a reason for withdrawing the job offer, the totality of the evidence establishes that Dr. Ross was not upset about the pregnancy. Both Plaintiff and Dr. Ross testified that Dr. Ross congratulated Plaintiff after Plaintiff disclosed her pregnancy. Dr. Ross also credibly testified that she was happy for Plaintiff and that she is typically very excited about other people's pregnancies. Thus, in her communications with Plaintiff, Dr. Ross did not demonstrate any animus or hostility toward Plaintiff because of her pregnancy. Rather, as discussed [earlier], Dr. Ross's overriding concern has been the disruption that would be caused by Plaintiff's absence if Defendant were to deviate from its policy of limiting maternity leave to six weeks. . . . [T]he Court is persuaded that Dr. Ross'[s] decision was based upon the potential for disruption caused by a lengthy maternity leave, rather than the pregnancy itself. Accordingly, the Court concludes that Plaintiff has failed to establish her MHRA claim by the direct method of proof.

The district court also concluded that LaPoint did not prove her MHRA claim by the indirect method of proof. After reciting the evidence supporting Family Orthodontics' contention that its decision was based on a legitimate, nondiscriminatory reason—namely, the disruption that would be caused by a 12-week leave—the court reviewed the evidence from Dr. Ross's notes, voicemails, and e-mails suggesting that LaPoint's failure to disclose her pregnancy during the job interview played a role in the decision to withdraw the job offer. The court then stated:

> The Court concludes, however, that this evidence is insufficient to overcome Dr. Ross's testimony, which the Court has found to be highly credible, and the substantial volume of evidence corroborating Dr. Ross's testimony. Moreover, Plaintiff's contention that pregnancy discrimination was the true basis for Defendant's refusal to hire Plaintiff is undermined by Defendant's previous actions in hiring two employees while they were pregnant. As discussed previously, the totality of the evidence establishes that Dr. Ross's overriding concern has been the disruption that would be caused by Plaintiff's absence if she were to take a lengthy maternity leave, rather than the pregnancy itself. Accordingly, the Court concludes Dr. Ross's testimony was honest and that Plaintiff has not proved by a preponderance of the evidence that Defendant's articulated reason for refusing to hire Plaintiff was pretext for discrimination. The Court therefore concludes that Plaintiff has failed to establish her MHRA claim by the indirect method of proof.

Following the district court's decision, LaPoint moved for judgment as a matter of law, for amended findings, and alternatively for a new trial. The court denied the motion. The court rejected LaPoint's argument that "rather than determine whether pregnancy was one of the reasons Dr. Ross considered in her decision to refrain from hiring Plaintiff," the Court analyzed which of the "two reasons Dr. Ross provided—Plaintiff's pregnancy and the disrup-

tion Plaintiff's twelve-week maternity leave would cause her practice—factored most prominently into her decision." The court explained that "the two reasons cited by Dr. Ross were interrelated, and Plaintiff's pregnancy was only a factor in Dr. Ross's decision making process insofar as it provided the basis for Plaintiff's planned twelve-week maternity leave." The court then cited its previous finding of fact that Dr. Ross "was not upset about Plaintiff's pregnancy but questioned why Plaintiff did not bring it up initially so they could discuss leave of absence issues at that time. Her concern was the length of the leave sought by Plaintiff on the practice." The court concluded that "only one reason truly factored into her decision—Plaintiff's planned twelve-week maternity leave." Later, the court stated that the length of the leave "was the sole reason Dr. Ross declined to hire Plaintiff."

LaPoint appealed, and the court of appeals reversed in a published opinion. *LaPoint v. Family Orthodontics, P.A.*, 872 N.W.2d 889, 894 (Minn. App. 2015). The court of appeals held that "as a matter of law, [LaPoint] directly proved her claim by a preponderance of the evidence." *Id.* at 890. As did the district court, the court of appeals cited *Goins* for the applicable standard: whether LaPoint had proven that her pregnancy "actually motivated" Family Orthodontics' decision not to hire her. *Id.* at 892 (quoting *Goins*, 635 N.W.2d at 722) (internal quotation marks omitted).

Analyzing the case only under the "direct-evidence" method, *id.* at 893, the court of appeals defined "direct evidence" as evidence showing " 'that the employer's discrimination was purposeful, intentional, or overt.' " *Id.* at 893 (quoting *Goins*, 635 N.W.2d at 722). As an alternative formulation, the court of appeals stated that "[d]irect evidence is evidence showing a *specific link* between the alleged discriminatory

animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (emphasis added) (quoting *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007)) (internal quotation marks omitted). The court noted the "extensive evidence in the record that Family Orthodontics discriminated against LaPoint on the basis of her pregnancy in a purposeful, intentional, and overt manner," *id.* namely Dr. Ross's thrice-articulated "two reasons for withdrawing the job offer: failure to disclose the pregnancy at the interview and the disruption of a long maternity leave." *Id.*

With regard to those reasons, the court of appeals explained that "[t]he first reason is based at least substantially upon pregnancy and is illegitimate, as it punishes LaPoint for failing to disclose a fact about which Family Orthodontics could not lawfully inquire." *Id.* (citing Minn. Stat. § 363A.08, subd. 4(a)(1) (prohibiting an employer from requiring or requesting that a job applicant provide information pertaining to sex)). And, the court reasoned, "[t]he second reason is very closely related to LaPoint's pregnancy, as her anticipated maternity leave was due to her pregnancy." *Id.* The court of appeals concluded that "[t]he district court's findings confirm that the reasons Dr. Ross articulated in her communications with LaPoint motivated her decision to withdraw the job offer." *Id.* at 893-94.

The court of appeals also concluded that "[t]aken as a whole, the evidence and the district court's findings show a specific link between LaPoint's pregnancy and the rescission of the job offer...." *Id.* at 894 (citations omitted). The court of appeals further held that "[i]n the face of the robust affirmative evidence, the district court erred in concluding that LaPoint failed to

prove that her pregnancy was a substantial causative factor in Family Orthodontics's decision." *Id.* (citations omitted). We granted Family Orthodontics' petition for review.

On appeal to our court, Family Orthodontics argues that the court of appeals overstepped its bounds in creating a new "specific link" standard and in refusing to defer to the district court's findings of fact. LaPoint urges us to affirm, arguing that she was entitled to judgment as a matter of law because her pregnancy played a role in Dr. Ross's employment decision.

## I.

We turn first to Family Orthodontics' argument that the court of appeals applied an incorrect legal standard to evaluate LaPoint's claim. This argument presents an issue of law that we review de novo. *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010) (stating that we review the construction of the MHRA's provisions de novo). LaPoint's claim arises under the MHRA, which prohibits an employer from discriminating against a person with respect to hiring on the basis of sex. Minn. Stat. § 363A.08, subd. 2. The Legislature has defined "sex" under the MHRA to include "pregnancy, childbirth, and disabilities related to pregnancy or childbirth." Minn. Stat. § 363A.03, subd. 42. The MHRA also makes it an unlawful employment practice for an employer to "require or request" that a job applicant "furnish information that pertains to ... sex...." Minn. Stat. § 363A.08, subd. 4(a)(1).

■ LaPoint is entitled to prevail on her claim if she is able to prove that her pregnancy "actually motivated" Family Orthodontics' decision not to hire her. *Goins*, 635 N.W.2d at 722 (citations omitted) (internal quotation marks omitted). LaPoint satisfies this requirement if she can demonstrate that pregnancy was "a substantial causative factor" in the employment decision. *Anderson*, 417 N.W.2d at 624. We have rejected, however, the proposition that the protected characteristic—in this case pregnancy—must be a "but-for" cause of the employer's conduct. *Id.* In other words, LaPoint need not prove that Family Orthodontics would have hired her absent unlawful discrimination in order to establish liability, and proof by the employer that it would have made the same decision absent a discriminatory motive is no defense. *Id.* at 626.

With these principles in mind, we turn to the parties' arguments. The parties generally agree, at least at this stage of the litigation, that the standard we set forth in *Goins* and *Anderson* remains the controlling standard for determining liability in a disparate-treatment case under the MHRA, including this one. But Family Orthodontics argues that the court of appeals, despite citing to *Goins* and *Anderson*, actually applied a new, more plaintiff-friendly standard requiring only a "specific link" between the protected characteristic and the employer's conduct.

In particular, Family Orthodontics points to the court of appeals' quotation of the "specific link" language in *Ramlet*, a federal case, that "[d]irect evidence is evidence showing a *specific link* between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *LaPoint*, 872 N.W.2d at 893 (emphasis added) (quoting *Ramlet*, 507 F.3d at 1152) (internal quotation marks omitted). Family Orthodontics correctly points out that in *Ramlet*, the Eighth Circuit was reviewing a dismissal on summary judgment, not a ruling made after a trial on the merits, and asserts that the court of appeals incorrectly elevated

the existence of direct evidence of discrimination into an "automatic win" for the plaintiff.

LaPoint, in response, argues that the court of appeals did not create a new "specific link" standard, but simply applied the "actually motivated" standard from *Goins*. Rather than adopting a new standard, LaPoint argues, the court cited to the "specific link" language from *Ramlet* only to determine whether the record could appropriately be analyzed under the direct method of proof.

■ We need not resolve the parties' dispute about the meaning of the court of appeals' opinion. We reiterate that the appropriate standard for determining liability on a disparate-treatment claim under the MHRA is the one we stated in *Goins* and *Anderson*: the plaintiff proves her case if she establishes that the protected characteristic "actually motivated" the employer's conduct, *Goins*, 635 N.W.2d at 722 (citations omitted) (internal quotation marks omitted), or to put it another way, LaPoint can prove that her pregnancy was a "substantial causative factor" in the employment decision at issue, *Anderson*, 417 N.W.2d at 624. To the extent the court of appeals applied a different standard, it erred.

## II.

Having clarified the applicable legal standard, we now turn to Family Orthodontics' argument that the court of appeals erred because it did not defer to the district court's findings of fact. The court of appeals found that "[t]aken as a whole, the evidence and the district court's finding show a specific link between LaPoint's pregnancy and the rescission of the job offer." 872 N.W.2d at 894. Two sentences later, the court of appeals stated that "[i]n the face of the robust affirmative evidence, the district court erred in concluding that

LaPoint failed to prove that her pregnancy was a substantial causative factor in Family Orthodontics'[ ] decision." *Id.* Family Orthodontics argues that the court of appeals' conclusion of discrimination can only be justified (under the correct legal standard) if the court engaged in appellate fact-finding and improperly disregarded the district court's findings. LaPoint argues, in response, that the court of appeals merely relied on the district court's findings of fact and correctly concluded that based on those findings, no reasonable fact-finder could have found that LaPoint's pregnancy did not "actually motivate" Family Orthodontics' decision.

Both the United States Supreme Court and our court have recognized that the ultimate question of whether the defendant discriminated against the plaintiff is one of fact. *See Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (identifying the issue of discrimination as an ultimate question of fact (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993))); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("The 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.'" (alteration in original) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (same))); *Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 557 (Minn. 1996) ("The *Hicks* court merely emphasized that the plaintiff still bore the 'ultimate burden' of persuading the factfinder by a preponderance of the evidence that the defendant discriminated against him because of his race."); *Bilal v. Nw. Airlines, Inc.*, 537 N.W.2d 614, 618 (Minn. 1995) ("The ultimate burden of persuading the trier of fact that the defendant inten-

tionally discriminated against the plaintiff remains with the plaintiff.").[2]

█ The district court resolved that fact question in this case after hearing testimony over the course of a two-day trial. Under our standard of review, we "accord[ ] great deference to a trial court's findings of fact because it has the advantage of hearing the testimony, assessing relative credibility of witnesses and acquiring a thorough understanding of the circumstances unique to the matter before it." *Hasnudeen*, 552 N.W.2d at 557; *see also* Minn. R. Civ. P. 52.01 (noting that the court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011) (reviewing the district court's factual findings for clear error).

*Hasnudeen* is particularly apt here because that case was also an employment discrimination case in which the court of appeals reversed the district court's finding that there had been no unlawful discrimination. 552 N.W.2d at 557. The plaintiffs contended that their employer had terminated them on the basis of race, in violation of the MHRA. *Id.* at 556. We noted that the plaintiffs "worked in a 'racially-charged atmosphere,' " and that the record contained evidence of "deplorable conduct." *Id.* at 557-58 Nevertheless, we reversed the court of appeals and reinstated the district court's finding that there

had been no unlawful discrimination motivating the employment decision because "the matter rest[ed] largely on the credibility of the witnesses and the weight, if any, to be given their testimony." *Id.* at 557. Under those circumstances, we were "unable to conclude that the findings [were] clearly erroneous." *Id.*

█ The result in *Hasnudeen* is consistent with our recognition that the proper standard of review "does not permit us to engage in fact-finding anew." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (citing *Johnson v. Johnson*, 250 Minn. 282, 288, 84 N.W.2d 249, 254 (1957) ("It is not within the province of this court to determine issues of fact.... This is true even though this court might find the facts to be different if it had the factfinding function.")). Instead, "we examine the record to see '[i]f there is reasonable evidence' in the record to support the court's findings." *Id.* (alteration in original) (quoting *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999)). In addition, "when determining whether a finding of fact is clearly erroneous, we view the evidence in the light most favorable to the verdict." *Id.* (citing *In re Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012)). To conclude that findings of fact are clearly erroneous, we must be "left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *Stisser Grantor Trust*, 818 N.W.2d at 507) (internal quotation marks omitted).

---

**2.** In *Lamb v. Village of Bagley*, 310 N.W.2d 508, 511 (Minn. 1981), we held that a defendant discriminated as a matter of law. But this holding was a function of the burden-shifting framework outlined in *McDonnell Douglas Corp.*, 411 U.S. at 802-03, 93 S.Ct. 1817. Specifically, in *Lamb*, we held that the employer did not meet its burden on the second step of the *McDonnell Douglas* framework. 310 N.W.2d at 511. Because the em-

ployer was unable to provide evidence of a non-discriminatory reason for the disparate treatment, we held that the plaintiff was entitled to judgment as a matter of law. *Id.* Here, as the district court recognized in denying summary judgment, there was a genuine dispute as to the motivation for the employment decision, and that dispute was the subject of the trial.

The court of appeals in this case did not explicitly find that any of the district court's findings of fact were clearly erroneous. The parties focus on the district court's findings regarding Dr. Ross's motivation in making the decision to rescind the job offer, which they agree is a finding of fact. Family Orthodontics emphasizes that the district court found that the length of leave requested was the "overriding concern," or the "only one reason [that] truly factored into [the] decision" and the "sole reason Dr. Ross declined to hire Plaintiff," and argues that the district court based these findings on Dr. Ross's testimony, which the court found "highly credible."

LaPoint, by contrast, argues that the court of appeals correctly based its decision on the district court's factual findings. Specifically, she points out that Dr. Ross herself stated (on three separate occasions) that LaPoint's failure to disclose her pregnancy (1) was one of the "two things [that] really kept [her] from sleeping well"; (2) was one of her "concerns"; and (3) left her "confused," which was one of "two concerns" that together constituted "[t]he reason why [she] withdrew the job offer." In addition, the district court found that Dr. Ross "credibly testified" that she "questioned why Plaintiff did not bring [her pregnancy] up initially so they could discuss leave of absence issues at that time." LaPoint argues that this evidence, which the district court credited, compels a finding that LaPoint's failure to raise the issue of her pregnancy in the interview "actually motivated" Dr. Ross's decision (and, therefore, Family Orthodontics' decision) to rescind the offer, and renders the district court's finding that the length of leave requested was the "sole reason" for the decision clearly erroneous.

LaPoint further argues that rescinding a job offer because a person fails to disclose a pregnancy is illegitimate discrimination on the basis of sex. The court of appeals reasoned that a rescission under these conditions "punishes LaPoint for failing to disclose a fact about which Family Orthodontics could not lawfully inquire." *LaPoint*, 872 N.W.2d at 893; *see* Minn. Stat. § 363A.08, subd. 4(a)(1) (prohibiting an employer from requiring or requesting that a job applicant provide information pertaining to sex). Family Orthodontics did not really contest the point, instead arguing that Dr. Ross was happy about the pregnancy and therefore did not have a "punitive outlook," and that at any rate the district court did not find that the failure to disclose was a cause of the decision.

Certainly Dr. Ross's remarks, made contemporaneously with her decision to rescind the offer, and stating that LaPoint's failure to disclose her pregnancy during the interview was a concern, provide evidence that such considerations "actually motivated" Dr. Ross's decision. *See LaPoint*, 872 N.W.2d at 894. Nevertheless, viewing the evidence presented in the light most favorable to the verdict, as we must, *see Rasmussen*, 832 N.W.2d at 797, we conclude that "there is reasonable evidence in the record to support the court's findings." *Id.* (citation omitted) (internal quotation marks omitted). Specifically, the district court found that Dr. Ross "*questioned* why Plaintiff did not bring [her pregnancy] up initially so they could discuss leave of absence issues at that time," but that "[h]er *concern* was the [effect of the] length of the leave sought by Plaintiff on the practice." (Emphases added.) The district court, as the fact-finder, had the opportunity to observe Dr. Ross's testimony first-hand, and the court specifically found that Dr. Ross's testimony about why she made the decision was credible. We do not lightly disturb that finding.

■ Our review of the record, however, leaves us with doubt about whether the district court properly applied the law. Specifically, the court repeatedly refuted the argument presented by LaPoint, that Family Orthodontics might have rescinded the job offer because of the post-offer revelation that she was pregnant, by explaining that Dr. Ross lacked anger or hostility about the pregnancy. But a finding of animus, in the sense of dislike or hostility, is not necessary for a forbidden criterion to "actually motivate[ ]" an employer's decision.[3] To be sure, a lack of animus can be relevant to the question of discriminatory motive, because the existence of animus could suggest that discrimination is more likely. But the district court's reasoning suggests it may have incorrectly believed that animus was *required* for a finding of discrimination under the MHRA.

In past cases, when we have concluded that errors of law may have affected a district court's decision, we have remanded to the district court for further proceedings. *See, e.g., Rasmussen,* 832 N.W.2d at 799; *State v. Mauer,* 741 N.W.2d 107, 116 (Minn. 2007). Here we are unable to determine whether the district court, if it had applied the correct law regarding animus, would have made the same findings of fact. Accordingly, a remand is appropriate.

Under the appropriate legal standard, LaPoint was required to prove that her pregnancy "actually motivated" Family Orthodontics' decision not to hire her. And although discriminatory animus may be relevant to motivation, LaPoint was not required to prove that Dr. Ross was hostile to LaPoint's pregnancy in order for her to prevail. Reviewing the district court's finding on the issue of actual motivation, the court's findings are reasonably supported by the evidence. But we are uncertain whether the district court would have made the same findings if it had applied the correct law regarding animus. Accordingly, we reverse the decision of the

**3.** The court found that "Dr. Ross *did not demonstrate any animus* toward Plaintiff because of her pregnancy. Her overriding concern was the disruption a twelve week maternity leave would have on her practice and the impact upon her employees should she deviate from the Clinic's longstanding policy of six weeks." (Emphasis added.) The juxtaposition of these sentences suggests that the district court believed that *because* "Dr. Ross did not demonstrate any animus toward Plaintiff because of her pregnancy," pregnancy-related considerations played no part in the decision.

Later, the court stated:
Although Dr. Ross'[s] handwritten notes, voicemail, and follow-up email to Plaintiff cited Plaintiff's failure to disclose her pregnancy during the interview as a reason for withdrawing the job offer, the totality of the evidence establishes that *Dr. Ross was not upset about the pregnancy. Both Plaintiff and Dr. Ross testified that Dr. Ross congratulated Plaintiff after Plaintiff disclosed her pregnancy. Dr. Ross also credibly testified that she was happy for Plaintiff and that she is typically very excited about other people's*

*pregnancies. Thus, in her communications with Plaintiff, Dr. Ross did not demonstrate any animus or hostility toward Plaintiff because of her pregnancy.* Rather, as discussed [earlier], Dr. Ross's overriding concern has been the disruption that would be caused by Plaintiff's absence if Defendant were to deviate from its policy of limiting maternity leave to six weeks.
(Emphasis added.) Again, the court's explanation suggests that the court may have believed that because Dr. Ross was happy about the pregnancy, she could not have been motivated by LaPoint's failure to disclose the pregnancy.

On a third occasion, the district court stated: "Moreover, Plaintiff's contention that pregnancy discrimination was the true basis for Defendant's refusal to hire Plaintiff is undermined by Defendant's previous actions in hiring two employees while they were pregnant." Although an employer's decision to hire pregnant employees might suggest that she has no animus toward pregnant women, such a decision can also be consistent with a motivation to rescind an offer to a potential employee who does not disclose her pregnancy.

court of appeals and remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

LILLEHAUG, J., took no part in the consideration or decision of this case.

## DISSENT

CHUTICH, Justice (dissenting).

I agree with the majority that the district court may have incorrectly believed that a finding of animus or hostility was required under the Minnesota Human Rights Act (the Act) before it could conclude that appellant Family Orthodontics, P.A. was actually motivated by respondent Nicole LaPoint's pregnancy when it rescinded its offer of employment to her. I also agree with the majority that mixed-motive liability does not require proof that an illegitimate reason was the but-for cause of an employment action, only that it "actually motivated" the action. *Goins v. W. Grp.*, 635 N.W.2d 717, 722 (Minn. 2001) (citations omitted) (internal quotation marks omitted). I depart from the majority's determination that a remand is appropriate, however, because I believe that, when the appropriate legal standard is applied, the district court's findings show that LaPoint's choice not to reveal her pregnancy before receiving a job offer actually motivated Family Orthodontics' decision to rescind its offer, in violation of

the Act. I would therefore affirm the determination of the court of appeals that Family Orthodontics discriminated against LaPoint because she was pregnant. Accordingly, I respectfully dissent.

At the outset, I disagree that the ultimate question here is one of fact. Certainly, the question of what actually motivated Family Orthodontics to rescind the offer is one of fact, and this court must uphold the district court's findings on that issue unless they are clearly erroneous. *See Pullman-Standard v. Swint*, 456 U.S. 273, 289, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("[D]iscriminatory intent is a finding of fact to be made by the trial court. . . ."); *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) ("[W]e review the district court's factual findings for clear error."). But we review questions of law de novo and have the authority to correct the district court's misapplication of the law without an accompanying determination that the district court's findings were clearly erroneous. *See Rasmussen*, 832 N.W.2d at 797-99.[1] I agree with the court of appeals that the district court misapplied the law.

Dr. Ross contemporaneously cited two reasons for her decision to withdraw the job offer. She did this not once, but three times, referring each time to (1) LaPoint's choice not to disclose her pregnancy at the interview, and (2) LaPoint's request for 12 weeks of maternity leave.[2] The district

---

1. In *Rasmussen*, this court concluded that two legal errors occurred in the district court's analysis and remanded for further consideration because it was "not able to ascertain exactly how the two errors of law impacted the district court's decision to dismiss the Employees' claims." 832 N.W.2d at 799. That approach is unnecessary here because the correct application of the law to the factual findings of the district court requires judgment in LaPoint's favor. Thus, we need not "engage in fact-finding anew" to affirm

the court of appeals. *Id.* at 797; *see also id.* at 803-04 (Wright, J., concurring in part, dissenting in part) (concluding that remand is unnecessary if the evidence supports only one result (citing *Pullman-Standard*, 456 U.S. at 292, 102 S.Ct. 1781)).

2. The district court found that Dr. Ross reasonably inferred that LaPoint would not accept the clinic's 6-week maternity leave policy. Note, however, that LaPoint offered to consider a shorter maternity leave. This offer could be fairly construed as an attempt to

court interpreted these reasons as "interrelated," finding that Dr. Ross would have preferred to discuss LaPoint's maternity needs at the initial interview, so that they could have established then that Dr. Ross's practice could not accommodate a 12-week leave. The length of the leave, the district court found, was Dr. Ross's "overriding" or "sole" concern.

Although the district court found that Dr. Ross's cited reasons for rescission were both related to the length of LaPoint's maternity leave, that interpretation does not change the distinct nature of the two explanations. Stated another way, two reasons, even if interrelated, are still two reasons.[3] And if one of the reasons is unlawful, that gives rise to liability under the Act if a preponderance of the evidence shows that it actually motivated the rescission of the offer. *McGrath v. TCF Bank Sav., FSB*, 509 N.W.2d 365, 366 (Minn. 1993) ("[E]ven if an employer has a legitimate reason for the [employment action], a plaintiff may nevertheless prevail if an illegitimate reason 'more likely than not' motivated the ... decision." (quoting *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 627 (Minn. 1988))); *see also Goins*, 635 N.W.2d at 722 (stating that disparate treatment liability depends on whether the protected trait "actually motivated the employer's decision" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147

L.Ed.2d 105 (2000)) (internal quotation marks omitted)).

Under the Act, an applicant may choose not to disclose her need for maternity leave in an interview, and an employer may not rescind a job offer because of that choice. The Act provides that "it is an unfair employment practice for an employer ... to ... require or request" that an applicant for employment "furnish information that pertains to ... sex." Minn. Stat. § 363A.08, subd. 4(a)(1) (2016). The Act specifically defines "sex" to include "pregnancy, childbirth, and disabilities related to pregnancy or childbirth." Minn. Stat. § 363A.03, subd. 42 (2016).

Because the Act protects an applicant's right to withhold the need for maternity leave at the interview stage, it follows naturally that failure to disclose that information is an illegitimate reason for an employer to withdraw a job offer. This prohibition does not cease to apply simply because the employer wants the applicant to disclose her pregnancy for seemingly benign reasons. Although the district court found that Dr. Ross's concern about LaPoint's nondisclosure flowed from her concern over the length of the leave, the *reason* that Dr. Ross wanted LaPoint to disclose the pregnancy is irrelevant. Dr. Ross was not entitled to have a discussion about pregnancy with LaPoint at the job interview for *any* reason; nor could she hold the lack of disclosure against La-

---

negotiate, and one that Dr. Ross never acknowledged. Instead, Dr. Ross told LaPoint that she would "be in touch" when she returned from vacation, and then she did not contact LaPoint again. Dr. Ross admitted that she never explicitly offered LaPoint the position conditioned upon acceptance of the 6-week maternity leave policy.

**3.** If the district court determined that Dr. Ross was not at all motivated by LaPoint's nondisclosure, I would consider that factual finding to be clearly erroneous. A finding that

Dr. Ross was not actually motivated by LaPoint's choice not to disclose the pregnancy at the interview—in light of Dr. Ross's repeated, consistent reference to LaPoint's nondisclosure as the first of two reasons for rescinding the job offer—would leave me "with the definite and firm conviction that a mistake has been made." *Rasmussen*, 832 N.W.2d at 797 (quoting *In re Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012)) (internal quotation marks omitted).

Point. What matters is that the lack of disclosure "actually played a role" in Dr. Ross's decision to rescind the job offer. *Goins*, 635 N.W.2d at 722 (quoting *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097) (internal quotation marks omitted).

By prohibiting employers from requiring the disclosure of pregnancy or childbirth information during interviews, this provision of the Act combats the well-documented phenomenon of unconscious bias against pregnant women and mothers in employment.[4] *See* Joanna L. Grossman, *Expanding the Core: Pregnancy Discrimination Law as it Approaches Full Term*, 52 Idaho L. Rev. 825, 847-49 (2016) (describing social science research that reflects unconscious bias against pregnant or child-rearing women in employment contexts).

This bias does not necessarily arise from hostility toward pregnant women. For example, pregnant women are likely to be perceived as "more warm, but less competent, than women without children and men with children." *Id.* at 848; *see also* Andrea L. Miller, *The Use (and Misuse) of the Same-Actor Inference in Family Responsibilities Discrimination Litigation: Lessons from Social Psychology on Flexibility Stigma*, 41 Wm. Mitchell L. Rev. 1032, 1039 (2015). Common stereotypes associated with motherhood include "that women with small children will be less dependable or productive than other employees; that mothers will not, or should not, work long hours; and that mothers are not committed to their jobs." Catherine Albiston et al., *Ten Lessons for Practitioners About Family Responsibilities Discrimination and Stereotyping Evidence*, 59 Hastings L.J. 1285, 1296 (2008) (footnotes omitted). To combat the effects of this bias against pregnant women, the Act

gives applicants the right to withhold information relating to pregnancy or childbirth before receiving a job offer.

On remand, I trust that the district court will consider the above points of law. Additionally, under the analysis set forth in *Friend v. Gopher Co.*, 771 N.W.2d 33, 40 (Minn. App. 2009), plaintiffs may prove discrimination under the direct method (as opposed to the indirect, burden-shifting method) by presenting direct evidence of discrimination, circumstantial evidence, or both. Perhaps because of the misconception that the direct method requires proof of discriminatory animus, the district court did not consider circumstantial evidence of discrimination when evaluating LaPoint's claim under the direct method. In my view, upon remand, the district court must consider all the evidence together—direct and circumstantial—when determining whether it is more likely than not that LaPoint's choice not to reveal her pregnancy before receiving a job offer actually played a role in Family Orthodontics' decision to rescind her offer. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (holding that a plaintiff is not required to produce direct evidence of discrimination to obtain a mixed-motive jury instruction under Title VII).

In sum, the Minnesota Human Rights Act unambiguously prohibits employers from asking applicants about maternity needs before extending a job offer. Minn. Stat. § 363A.08, subd. 4(a)(1). Here, Dr. Ross rescinded LaPoint's job offer in part because LaPoint did not disclose her need for maternity leave at the initial interview. Because this rescission clearly violated the Act, I see no need to remand to the district court. I would affirm the decision of

---

4. The brief of amicus curiae Gender Justice gathers considerable social science research showing that pregnant workers are routinely viewed less favorably than non-pregnant workers in several employment contexts, including hiring.

the court of appeals. Accordingly, I respectfully dissent.

MCKEIG, Justice (dissenting).

I join in the dissent of Justice Chutich.